DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY R. CORMAN, ) | |
| ) | CASE NO. 5:04CV1792 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| UCG, ) | (Resolving Doc. No. 22) |
| ) | |
| Defendant(s). ) | |
| ) | |

## I. Introduction

Before the Court is Plaintiff Timothy R. Corman's Motion for Summary Judgment (Doc. No. 22), which has been fully briefed (Doc. No.'s 23 and 24). On April 30, 2004, Corman entered into an employment agreement ("the Agreement") with United Communications Group ("UCG"). Under the terms of the Agreement, Corman was to be provided a base salary, a structured bonus plan, temporary living arrangements through June 30, 2005, relocation assistance, and other employment benefits. Under the Agreement, Corman's employment was designated as "at will" and could be terminated at any time, "with cause" upon immediate notice, or without cause with 30 days notice. The Agreement stipulated that if UCG terminated his employment "without cause" within Corman's first twelve months of employment, 30 days notice would be given and Corman would receive three months pay at his normal salary rate as severance pay. However, if Corman was fired "with cause," under the Agreement he would not receive 30 days notice or severance pay from UCG. The Agreement, however, did not specifically stipulate the difference between "for cause" and "without cause" and

(504CV1792)

made no reference to the effect such termination distinctions would have upon the temporary housing benefits.

On June 30, 2004, UCG terminated Corman's employment, citing "issues of integrity and honesty" resulting from the posting of his resume on the internet in search of employment. UCG considers Corman's termination to be "with cause," and, therefore, he is not entitled to notice or severance pay. Corman, however, contends his termination from UCG was solely for posting his resume and, therefore, "without cause." On July 28, 2004, Corman filed an action for breach of contract based upon the Agreement, claiming he is entitled to notice and severance pay, as well as transitional housing payments and excess medical costs.

Corman has moved for summary judgment on these claims. However, because there are genuine issues of material fact regarding the reasons for Corman's termination from UCG, the fact that a determination of whether termination was "with" or "without cause" is a factual determination, and because ambiguity exists in the Agreement and in the record surrounding the transitional housing claims, the Motion for Summary Judgment is DENIED.

## II. Background

In March of 2004, UCG, a limited partnership principally located in Rockville, Maryland, found Plaintiff's resume on www.Monster.com ("Monster"), a resume posting website for prospective employers/employees. After originally deciding not to hire Corman based upon his reluctance to relocate to Maryland, Corman eventually convinced Todd Foreman and Bob Koran, partners in UCG who oversee the Shared Services Division, to extend him an offer of employment to serve as Chief Financial Officer, Chief Operations Officer, and Director of Shared Services. On April 30, 2004,

(504CV1792)

UCG sent Corman a letter extending an offer of employment and outlining the terms of his employment with UCG. Under paragraphs 2-6 of the Agreement, Corman was to begin his employment on May 10, 2004 and be provided a base salary, a structured bonus plan contingent on his relocation to Maryland, temporary living arrangements through June 30, 2005, relocation assistance, and other employment benefits. Under paragraph 8 of the Agreement, Corman's employment was designated as "at will" and could be terminated at any time, "with cause" upon immediate notice, or without cause with 30 days notice. The Agreement stipulated that if UCG terminated the Agreement "without cause" within the first twelve months of employment, 30 days notice would be given and Corman would receive three months severance pay at his normal salary rate. However, if Corman was terminated "with cause," he would not receive 30 days notice or severance payments. The Agreement however, did not specifically stipulate the "for cause" or "without cause" distinctions or the effect such distinctions would have on the temporary housing benefit. Finally, under paragraph 13 of the Agreement, any and all disputes arising out of the Agreement would be governed by Maryland law.

On June 28, 2004, Robert Shapiro, an employee of UCG located in Boston, Massachusetts, found a second resume posted by Corman on Monster dated June 15, 2004. This second resume stated, among other things, Corman's supposed accomplishments with UCG, his availability within one month for new employment, and his desire for employment only within the state of Ohio. Subsequently, Shapiro contacted Corman's direct superiors, Foreman and Koran, about the posting of the new resume on Monster. Thereafter, Foreman and Koran decided to terminate Corman's employment on June 30, 2004, citing "issues of integrity and honesty." UCG claims this termination was based on the fact that Corman seriously misrepresented his accomplishments during his employment with UCG on his

(504CV1792)

second resume and that UCG had employed Corman based upon his eventual relocation to Maryland, which his second resume pronounced his unwillingness to do.

On July 2, 2004, Corman contacted Koran and Foreman regarding his termination from UCG. In his letter, Corman did not dispute the posting of his resume on Monster nor the "at will" nature of his employment. Corman, however, did dispute the determination that his termination was "with cause" and demanded the 30 days notice pay and severance pay outlined in the Agreement. UCG refused to pay.

Corman initiated this action on July 28, 2004, alleging breach of contract based upon the Agreement, seeking notice and severance pay, as well as transitional housing payments and excess medical costs. Corman has moved for summary judgment on the breach of contract claim. Furthermore, in Plaintiff's Reply to Defendant's Brief In Opposition to Plaintiff's Motion for Summary Judgment, Corman moved to separate the notice and severance payments damages recoverable under paragraph 8 of the Agreement from the transitional housing payments damages recoverable under paragraph 4 for the purposes of summary judgement (Doc. No. 24 at 4-5).

### III. Legal Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading,

(504CV1792)

but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" Celotex Corp. V. Catrett, 477 U.S. 317, 324 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." Reid v. Sears Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986) (citing Biechell v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984)); but see Baer v. Chase, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit"). Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

(504CV1792)

sided that one party must prevail as a matter of law." Id. At 251-52. See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

## IV. Discussion

Corman's claim for relief in the present case is based upon breach of contract and Corman moves for summary judgment. Neither Corman nor UCG dispute either the validity of the Agreement, or the specific provisions outlined therein. Paragraph 13 of the Agreement, states that Maryland law governs the Agreement. In the present case, summary judgment is not warranted based on three factors: (1) the determination of "cause" is generally viewed as a question of fact under Maryland law, (2) there are genuine factual issues surrounding Corman's termination, and (3) there is contractual ambiguity surrounding the transitional housing payments and, under Maryland law, this is a question of fact.

### A. Determination of "Cause" and Factual Issues Surrounding Corman's Termination

Under Maryland law, there is no definitive answer as to what constitutes "with cause" for termination. "[W]hether conduct amounts to 'just cause' necessarily varies with the nature of the particular employment. Simply put, what satisfies just cause in the context of one kind of employment may not rise to just cause in another employment situation." Sachs v. Regal Sav. Bank, 119 Md. App. 276, 284 (Md. Ct. Spec. App. 1998); See also Tricat Industries, Inc., v. Paul E. Harper, 131 Md. App. 89, 116, (Md. Ct. Spec. App. 2000.

Moreover,

(504CV1792)

> There is no single definition of what constitutes good cause for termination. It depends on a variety of factors, including the nature of the particular employment, any understandings reached between the employer and employee, the employer's rules and standards of performance, whether expressly set forth in employment policies or employee handbooks or established through past practice, generally accepted industry-wide standards of performance for the position in question, and the application of basic standards of performance that commonly adhere to practically all employment, such as the employee's obligation to refrain from any acts of disloyalty, dishonesty or insubordination.

Mazaroff, Stanley, Maryland Employment Law § 3.03 (2d ed. 2004).  Therefore, since determinations of "cause" are inherently case specific under Maryland law, this determination becomes a factual determination to be made at trial and not a question of law.  Therefore, summary judgment would be inappropriate in the present case.

Furthermore, significant factual discrepancies exist surrounding Corman's termination, making summary judgment inappropriate.  Corman contends that his termination from UCG was based upon his posting his resume online and that UCG has not offered any evidence to justify his termination for integrity and honesty issues.  He argues that posting one's resume cannot constitute cause because it violates Maryland public policy and would significantly hinder employment mobility.  Corman further argues that he was not given notice in the Agreement or elsewhere that posting his resume was prohibited by UCG and would result in termination "with cause."  UCG, however, contends that Corman was terminated for honesty and integrity issues based upon the misrepresentation of his accomplishments at UCG and the fact that he was seeking new employment after he convinced UCG to hire him based on his willingness to relocate.

A determination for the reason(s) behind Corman's termination is paramount for accessing whether his termination was "with" or "without cause." Only once such a determination is made, can the

(504CV1792)

issue of whether such a termination would be "with cause" or "without cause" be resolved. Therefore, because there is a significant factual discrepancy over Corman's termination, summary judgement is not appropriate in the present case.

### B. Moving Expenses

Corman argues that damages for temporary housing are warranted regardless of the notice and severance damages based on paragraph 4 of the Agreement and seeks summary judgment on the issue. Corman seeks to recover damages for the balance of his contract with the Execustay by Marriot apartment in the amount of $15,617.00. Under Maryland law, "[c]onstruction of a contract is, in the first instance, a question of law for the court to resolve. Shapiro v. Massengil, 105 Md. App. 743, 754 (1995). (citing Suburban Hosp. v. Dwiggins, 324 Md. 294, 306 (1991)). However, when the language of a contract is unclear "the meaning of the contract is a matter for the trier of fact to resolve." Id. at 755 ( citing Fournier v. U.S. Fidelity & Guaranty Co., 82 Md. App. 31, 44 (1990). In the present case, paragraph 4 clearly extends temporary housing benefits to Corman until June 30, 2005. However, the Agreement does not clearly state if such benefits will extend or expire once the employment agreement has been terminated. Nowhere in the Agreement is it expressly stated that the temporary housing benefits would extend to the balance of Corman's housing contract beyond the termination of the Agreement. Furthermore, the Agreement does not mention whether these benefits would be affected if Corman was terminated "with cause" or "without cause." Since the ambiguity over the scope of the Agreement is paramount in the present case, under Maryland contract law, the scope of the Agreement becomes an issue of fact and inappropriate for summary judgement.

Furthermore, the record is ambiguous as to whether the $15,617.00 dollars sought by Corman

(504CV1792)

is for housing costs incurred before or after the termination of the contract. If the damages sought are for costs incurred prior to Corman's termination from UCG, they clearly would be covered under the Agreement. However, if these costs were incurred after Corman's termination from UCG, Corman's recovery would be dependent upon the interpretation of the Agreement.. Therefore, due to the ambiguity in the Agreement and in the record, summary judgment is not appropriate.

### V. Conclusion

For the foregoing reasons, Plaintiff Timothy R. Corman's Motion for Summary Judgment (Doc. No. 22) is DENIED.

IT IS SO ORDERED.

| | |
|---|---|
| May 19, 2005 | /s/ David D. Dowd, Jr. |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |